**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**VINCENT WILLIAMS,**

       **Petitioner,**

   **v.**                         **CASE NO. 2:05-cv-769**
                                      **JUDGE FROST**
                                      **MAGISTRATE JUDGE ABEL**

**PAT HURLEY, Warden,**

       **Respondent.**

**REPORT AND RECOMMENDATION**

      Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties.

      This case involves petitioner's convictions after a jury trial in the Franklin County Court of Common Pleas on attempted burglary and possessing criminal burglary tools. Petitioner asserts in this federal habeas corpus petition that he was denied a fair trial by the trial court's evidentiary ruling; he was improperly sentenced for violating his post release control; that his convictions are against the manifest weight of the evidence; and that there is constitutionally insufficient evidence to sustain his convictions. For the reasons that follow, the Magistrate Judge concludes that petitioner's claims are either procedurally defaulted, fail to present an issue appropriate for federal habeas corpus review, or without merit and therefore **RECOMMENDS** that this action be **DISMISSED.**

**I. FACTS**

      This case involves the following facts, as summarized by the Tenth District Court of

Appeals:

> [A]t 10:00 a.m., on the morning of September 11, 2003, the
> complaining witness, Frank Erwin, heard a knock on his front door
> at 104 Rodgers Avenue in Franklinton. While he was en route to
> answer it, he heard a knock at his rear door. Looking out the window,
> Erwin saw an African-American man on his back porch looking out
> toward the alley rather than toward the back door. Erwin called 911
> and, while on the phone with the operator, heard the back screen door
> being cut, glass being cut, and the handle being jiggled. To the
> operator, Erwin described the perpetrator as a black man wearing a
> multi-colored flannel jacket who was "messing with the doorknob
> trying to push on my window." (Tr. at 29.)
>
> Officer Russell Weiner was one of several officers dispatched to the
> scene. Officer Weiner testified he was one-half mile away when he
> got the call and that, as he drove up to the house, he saw appellant
> running away. Officer Weiner and several other officers, including
> Officer Michael Burgett, pursued appellant on foot and were able to
> apprehend him. Officer Burgett testified he searched appellant's
> pockets and found on his person a flashlight, a screwdriver, and a
> putty knife.

Exhibit 11 to Return of Writ.  Petitioner was indicted by the September 12, 2003, term of the

Franklin County grand jury on attempted burglary, in violation of O.R.C. §2923.02, and possessing

criminal tools, in violation of O.R.C. §2923.04.  Exhibit 1 to Return of Writ.  The State also filed

a motion to terminate petitioner's post release control status.  Exhibit 3 to Return of Writ.  While

represented by counsel, petitioner proceeded to jury trial.  On February 25, 2004, petitioner was

found guilty, as charged.  On February 28, 2004, petitioner was sentenced to an aggregate term of

five years incarceration plus 873 days for violating post release control.  Exhibit 6 to Return of Writ.

Represented by new counsel, petitioner filed a timely appeal of his convictions to the Tenth District

Court of Appeals.  He asserted the following assignments of error:

> 1.  The convictions for attempted burglary and possessing criminal

tools are against the manifest weight of the evidence.

2.  The trial court erred in overruling defendant's Rule 29 motion as there was not sufficient evidence to convict the defendant.

3.  The trial court erred in allowing the testimony of Michael Bugget to be read into the record as he was not unavailable for purposes of the hearsay exception.

4.  The trial court erred in imposing eight hundred seventy three days for a post release control violation.

5.  The trial court erred in imposing the maximum sentences on both counts in the indictment.

Exhibit 9 to Return of Writ.  On November 23, 2004, the appellate court affirmed the judgment of

the trial court.  Exhibit 11 to Return of Writ.  Proceeding *pro se*, petitioner filed an appeal to the

Ohio Supreme Court.  He asserted the following propositions of law:

1.  The court of appeals erred when it ruled that the conviction for attempted burglary and possessing criminal tools was not against the manifest weight of evidence.

2.  The court of appeals erred in overruling the Rule 29 motion as there was not sufficient evidence to the defendant [sic].

3.  The court of appeals erred in upholding the imposition of eight hundred seventy three days for a post release control violation.

4.  The court of appeals erred in upholding the imposition of the maximum sentences on both counts in the indictment.

Exhibit 12 to Return of Writ.  On March 23, 2005, the Ohio Supreme Court dismissed the appeal

as not involving any substantial constitutional question.  Exhibit 14 to Return of Writ.  On February

4, 2005, petitioner filed a *pro se* application to reopen his appeal pursuant to Ohio Appellate Rule

26(B).  He asserted as follows:

1.  Appellate counsel failed to raise the issue that during trial the State was leading the witness, which mislead the jurors and having

3

the officer to commit perjury.

2. Appellate counsel failed to submit prior conviction and documents as part of the record for the appeal courts to review and consider it on the appeal of assignment of error [sic].

3. Appellate counsel failed to raise the issue that the alleged victim committed perjury during his testimony.

4. Appellate counsel failed to set forth that the trial court failed to swear in the testimony that is required by Evidence Rule 804.

5. Trial counsel failed to specifically object to the introduction of the witness' former testimony base[d] upon the State's failure to competently establish that the witness was unavailable.

Exhibit 15 to Return of Writ.  On April 5, 2005, the appellate court denied petitioner's application to reopen the appeal.  Exhibit 17 to Return of Writ.  Petitioner apparently never filed an appeal of the appellate court's decision to the Ohio Supreme Court.

On August 12, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  Petitioner alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1. The trial court erred in allowing the testimony of Michael Burgett to be read into the record since he was not available for purposes of the hearsay exception.

2. The trial court erred in imposing eight hundred seventy three days for a post release control violation.  And to give justification [sic].

3. The court of appeals erred when it ruled that the conviction for attempted burglary and possessing criminal tools was not against the manifest weight of the evidence.

It is the position of the respondent that claims one and two are procedurally defaulted and that claim three is without merit.

4

## II.  PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule.  *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id.*  Second, the Court must determine whether the state courts actually enforced the state procedural sanction.  *Id.*  Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  *Id.*  Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the

procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6ᵗʰ Cir. 1985).

## A.  CLAIM ONE

In claim one, petitioner asserts that he was denied a fair trial by admission of testimony by police officer Michael Burgett.  This claim is readily apparent from the face of the record, and was properly raised on direct appeal; however, petitioner failed again to raise this same claim on appeal to the Ohio Supreme Court.  *See* Exhibit 12 to Return of Writ.  Further, petitioner may now no longer present such claim under Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).  The state courts were never given an opportunity to enforce the procedural rule due to the nature of petitioner's procedural default.  The Court deems the first and second parts of the *Maupin* test to have been met.

The Court must decide whether the procedural rule at issue constitutes an adequate and independent basis upon which to foreclose review of petitioner's federal constitutional claim.  This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims. *See Maupin v. Smith*, 785 F.2d at 138.  Under this analysis, the procedural rule barring claim one constitutes an adequate and independent state ground for denying relief.  The state courts must be given a full and fair opportunity to remedy alleged constitutional defects.  The requirement that all available claims be asserted at the first opportunity to do so serves the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.  Further, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio

decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine.  *See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra*.

The Court concludes that petitioner has waived his right to present claim one for federal habeas corpus review.  Petitioner can still secure review of this claim on the merits if he demonstrates cause for his failure to follow the state procedural rule, as well as actual prejudice from the constitutional violation that he alleges.  Petitioner has failed to establish either cause for his procedural default or actual prejudice resulting from the alleged constitutional violation.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.  After review of the record, the Court does not deem this to be such a case.

## B.  CLAIM TWO

In claim two, petitioner asserts that he was improperly sentenced for violating his post release control because there was no evidence indicating that he had been advised at the time of his prior conviction and sentence regarding the sanctions for violating the terms of post release control. *Petition*, at 5.  Petitioner presented such claim on direct appeal and in his motion for leave to appeal the denial of that appeal to the Supreme Court of Ohio.  The Ohio Court of Appeals rejected the claim as follows:

> THE COURT: Mr. Williams, I am going to impose the maximum sentence on the attempted burglary, being five years in the state penitentiary.
>
> I'm also going to impose sentence twelve months for possession of criminal tools. They are going to run concurrently.
>
> I'm going to impose the balance of the eight hundred seventy-three

days of your post-release control and I'm going to run those sentences consecutive provided by statute.

I do have to advise you again with respect to post-release control. After you are released from the institution, you will have a period of post-release control up to a maximum of five years. If you violate any conditions of post-release control, your sentence could be extended and that will be done administratively as part of the sentence. The extension would be for a period of nine months for each violation and/or you can serve the entire amount, the balance of your post-release control.

If you commit any felony while you are on post-release control, any new felony that is committed by you would run consecutive with any violation you get as a result of post-release control.

* * *

Appellant correctly states that a trial court must notify a defendant that post-release control is a mandatory part of his sentence and that violation of post-release control is grounds for sanction. *See State v. Gleason,* Franklin App. No. 03AP-135, 2003-Ohio-6110, at ¶ 31-32; *Woods v. Telb* (2000), 89 Ohio St.3d 504, 733 N.E.2d 1103, paragraph two of the syllabus. Here, appellant argues that the failure to notify occurred during sentencing on his previous conviction. Appellant's only support for this contention is his counsel's assertion at trial that the prior sentencing entry does not explicitly state that the court notified appellant of the possible sanctions for a post-release control violation. There are two errors in this argument. First, the record of proceedings of a prior conviction is not part of the record before us in this appeal and, therefore, we may not consider it. Second, case law on this topic indicates that, even if a sentencing entry shows that a court notified a defendant, there still must be evidence in the sentencing hearing transcript that, in compliance with R.C. 2929.19(B), the court orally notified the defendant regarding the consequences of violating post-release control. *State v. Martin,* Trumbull App. No.2002-T-0111, 2004-Ohio-3190; *State v. Wilbon,* Cuyahoga App. No. 82934, 2004-Ohio-1784; *State v. Brown,* Hamilton App. No. C-020162, 2002-Ohio-5983. Therefore, the presence or absence of post-release control notification in the prior sentencing entry, even if it were a part of the current record on appeal, would not be dispositive on the question whether the court in that case actually informed appellant about post-release control.

8

Exhibit 11 to Return of Writ.  Thus, the state appellate court appears to have explicitly rejected petitioner's claim because it relied on evidence that was not readily apparent from the face of the record, and therefore, not properly considered on direct appeal, and also because his allegation was without merit.

However, it does not appear that petitioner has presented in claim two any issue of federal constitutional magnitude.  Petitioner argues solely that the state trial court violated state law.  This claim fails to present an issue appropriate for federal habeas corpus review.   A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §2254(a).  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th cir. 1988).  "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition.  *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).  Only where the error resulted in the denial of fundamental fairness will habeas relief be granted.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  Such are not the circumstances here.

### III.  CLAIM THREE

In claim three, petitioner asserts that his convictions are against the manifest weight of the evidence and that there is constitutionally insufficient evidence to sustain his convictions.  The Due Process Clause does not provide relief for defendants whose convictions are against the manifest

weight of the evidence, but only for those who have been convicted without proof sufficient to allow

a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969

(6th Cir.), *cert. denied*, 464 U.S. 962 (1983). In the context of a claim alleging a violation of due

process, "sufficiency of the evidence" refers to the due process requirement that there be enough

evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the

crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing a

sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect

to issues of conflicting testimony, weight of the evidence and the credibility of the witnesses.

*Jackson*, 443 U.S. at 319; *Walker*, 703 F.2d at 969.

However, under Ohio law, a claim that a verdict was against the manifest weight of the

evidence – as opposed to one based upon insufficient evidence – requires the appellate court to act

as a "thirteenth juror" and review the entire record, weigh the evidence and consider the credibility

of witnesses to determine whether "the jury clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*,

20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas

court does not function as an additional state appellate court, vested with the authority to conduct

such an exhaustive review, petitioner's claim that his conviction was against the manifest weight

of the evidence cannot be considered by this Court.

Petitioner does claim that there was constitutionally insufficient evidence to sustain his

convictions. Before a criminal defendant can be convicted consistent with the United States

Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt

beyond a reasonable doubt. *Jackson v. Virginia*, *supra*, 443 U.S. at 319. To determine whether the

10

evidence was sufficient to support a conviction, this Court must view the evidence in the light most

favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319).  The

prosecution is not affirmatively required to "rule out every hypothesis except that of guilt."  *Id*.

(quoting *Jackson*, at 326).  "[A] reviewing court 'faced with a record of historical facts that supports

conflicting inferences must presume - even if it does not affirmatively appear in the record - that the

trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that

resolution.'" *Id*. (quoting *Jackson*, at 326).  For example the trier of fact is entitled to disbelieve a

defendant's uncorroborated and confused testimony, and even to discount a defendant's credibility

on account of a prior felony conviction.  *Id*.

The state appellate court rejected petitioner's claim of insufficiency of the evidence as

follows:

> Appellant's first and second assignments of error are related and will
> be addressed together. Both argue that deficiencies in the state's
> evidence produced a conviction that was against the manifest weight
> of the evidence and unsupported by sufficient evidence.
>
> The Ohio Supreme Court outlined the role of an appellate court
> presented with a sufficiency of evidence argument in *State v. Jenks*
> (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the
> syllabus:
>
> An appellate court's function when reviewing the sufficiency of the
> evidence to support a criminal conviction is to examine the evidence
> admitted at trial to determine whether such evidence, if believed,
> would convince the average mind of the defendant's guilt beyond a
> reasonable doubt. The relevant inquiry is whether, after viewing the
> evidence in a light most favorable to the prosecution, any rational
> trier of fact could have found the essential elements of a crime proven
> beyond a reasonable doubt. * * * *See, also*, *Jackson v. Virginia*
> (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. This test
> raises a question of law and does not allow the court to weigh the
> evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485
> N.E.2d 717. Rather, the sufficiency of evidence test "gives full play

11

to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356.

\*\*\*

Appellant's primary assertions are: (1) that the identification of appellant is suspect because Erwin admitted to problems with mental and visual acuity, told police one thing then testified to something else, only saw appellant's back, and, when talking to police, referred to appellant using a racial epithet; and (2) that there was insufficient connection established between the common household items found on appellant's person and the attempted burglary he was said to have committed.

The state attributes discrepancies between Erwin's written statement and his testimony to Erwin's admitted difficulties with reading and writing. The state additionally asserts that circumstantial evidence connected the tools found on appellant with the attempted burglary, and that this was sufficient for the state to meet its burden of proof.

A defendant will not be entitled to reversal on manifest weight or insufficient evidence grounds merely because inconsistent testimony was heard at trial. "While the jury may take note of the inconsistencies and resolve or discount them accordingly, \* \* \* such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Nivens* (May 28, 1996), Franklin App. No. 95AP-1236. A jury, as finder of fact, may believe all, part, or none of a witness's testimony. *State v. Antill* (1964), 176 Ohio St. 61, 67 \* \* \*  *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21.

Evidence adduced at trial established that Erwin is 48 years old, has an eleventh grade education, and has been disabled for seven years due to an accident in which a van fell on him. On direct examination, the prosecution sought Erwin's explanation for discrepancies in his separate accounts of the events occurring that day, and his explanation for his use of a racial epithet. The following colloquy occurred:

12

Q. Now, when you spoke with the police on September 11th, can you tell us how your statement was given? Did you give an oral statement? Did you give a recorded statement? Written statement?

A. They had me fill out a piece of paper.

Q. And what instructions, if you recall, did you receive as to what you should put on that paper?

A. They told me to write down exactly what happened. But my reading and writing ain't that good, my spelling and stuff so I just wrote down a little bit and so forth. I wish I could spell better. I would have wrote a lot more down about exactly what happened. I just wrote down a few things.

Q. Okay. And that's because your reading and writing -

A. Yes, ma'am. Yes, ma'am. My education isn't that great up until I had that bump on me.

Q. The incident in the van that caused you to be on disability affect your ability to read and write?

A. Well, it caused the mental problems, too, physically and mentally.

Q. Did you also, do you recall, speak to another investigator about this and refer to the defendant as a nigger?

A. Yes, ma'am, I did.

Q. Would you please explain yourself?

A. Okay. When I said nigger, you know, you can take a white person, a Mexican or a black person, to me a nigger is a no good thief.

Q. And are you saying that this defendant is the one who committed this crime because he is black?

13

A. No.

Q. And during your testimony you took out a pair of glasses to look at these photographs.

A. Yes, ma'am.

Q. Do you recall whether you were wearing your glasses or if you needed glasses on September 11, 2003?

A. No. See, I just use my glasses when it's close-up, you know, like something small. I can't see it. I can see. I can see that picture right there. It's just something small I can't see, I have trouble seeing. My vision ain't the best. I think it might have had something to do with the van falling on me.
(Tr. at 31-33.)

From this and other testimony, the jury was entitled to decide whether Erwin was a credible witness, and whether he accurately identified appellant as the person he saw attempting to break into his house. Pursuant to Evid.R. 403, the state could have moved to suppress evidence of Erwin's possible racism, see *State v.. Hollis* (Mar. 21, 1986), Lake App. No. 10-194, but the state chose instead to permit Erwin to testify about what he said and explain why he said it. Appellant had the opportunity to cross-examine Erwin about his use of a racial epithet, and the jury could weigh for itself whether Erwin's use of such a derogatory term signified an inability on his part to properly identify appellant.

The other aspects of Erwin's differing accounts of events, particularly his identification of the color of shirt appellant was wearing, the knife appellant was using, and the type and location of the cuts he alleged appellant made to his screen and/or window, were all properly before the jury, as in each case Erwin explained the discrepancies and appellant had the opportunity to cross-examine.

Appellant also claims that the state failed to establish a sufficient connection between the charges against him and the items police found on appellant's person at the time of his arrest. R.C. 2923.24 provides:

14

(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.

(B) Each of the following constitutes prima-facie evidence of criminal purpose:

* * *

(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use.

This court recently determined that, where evidence regarding the surrounding circumstances would permit a jury to find beyond a reasonable doubt that the defendant intended to use everyday items for a criminal purpose, a trial court does not err in permitting the question to go to the jury. *State v. Lowry,* Franklin App. No. 03AP-415, 2004-Ohio-759. As we stated in *Lowry,* at ¶ 20:

Contrary to appellant's claim, this is not a case where "no other evidence connects appellant to the crimes or the use of tools to commit them." * * * The testimony at trial established that appellant was a passenger in a car closely matching the description of a car suspected in other recent automobile break-ins. A screwdriver, a flashlight and a pair of gloves were found under the seat directly in front of appellant. Based on this evidence * * * a reasonable juror could believe beyond a reasonable doubt that appellant either had or had under his control an instrument or device with purpose to use it criminally * * *.

In the case at bar, appellant argues the screwdriver, putty knife, and flashlight found in his pocket were common items, and the state failed to present sufficient evidence demonstrating that appellant carried these items for a criminal purpose. However, viewing the totality of the evidence presented at trial, we find there was sufficient evidence linking the tools to the attempted burglary, and that the court did not err in allowing the jury to weigh the evidence.

The facts before the jury indicated that police responded to a 911 call that a black man in a plaid shirt was attempting to obtain access to Erwin's home. Responding from just one-half mile away, an officer

15

spotted appellant, who matched Erwin's description, walking away from Erwin's home. Upon spotting the officer, appellant broke into a run. On foot, officers chased him through the neighborhood and, when they caught him, found in his pockets a putty knife, a flashlight, and a screwdriver. Considering all of these circumstances together, we find that a reasonable juror could conclude beyond a reasonable doubt that appellant was in possession of criminal tools.

Based upon these considerations, we cannot conclude that the finder of fact lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Thompkins,* at 387, 678 N.E.2d 541. Instead, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the state proved the essential elements of both the attempted burglary and the possession of criminal tools charges beyond a reasonable doubt. Thus, we overrule appellant's first and second assignments of error.

Exhibit 11 to Return of Writ.

The factual findings of the state court are presumed to be correct pursuant to 28 U.S.C. §2254(e):

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established federal law or was based on an unreasonable determination of the facts of record:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Petitioner has failed to meet this standard here.

As previously discussed, petitioner was convicted of attempted burglary, in violation of O.R.C. §2923.02, which provides:

> (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense.

> (B) It is no defense to a charge under this section that, in retrospect, commission of the offense which was the object of the attempt was either factually or legally impossible under the attendant circumstances, if that offense could have been committed had the attendant circumstances been as the actor believed them to be.

> (C) No person who is convicted of committing a specific offense, of complicity in the commission of an offense, or of conspiracy to commit an offense shall be convicted of an attempt to commit the same offense in violation of this section.

> (D) It is an affirmative defense to a charge under this section that the

actor abandoned his effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose.

(E) Whoever violates this section is guilty of an attempt to commit an offense.

As noted by the state appellate court, on September 11, 2003, after hearing noise from his front and back doors, Erwin saw petitioner on his back porch acting suspiciously. *Transcript*, at 15. He called 911. He watched petitioner cut the screen, reach his hand in, and jiggle the door knob. *Id.*, at 19. Petitioner then cut the window screen and began pushing on the plexiglass. *Id.* Erwin was certain of his identification of petitioner. *Id.,* at 30. As Officer Weiner arrived, using lights and sirens, he saw petitioner running from the rear of the house. *Id.*, at 60, 63, 69. After apprehending petitioner, police found a putty knife, a screwdriver, and a flashlight in petitioner's pocket. *Id.*, at 106.

In view of all of the foregoing, and for the reasons discussed by the state appellate court, this Court agrees that, when viewing all of the evidence in the light most favorable to the prosecution, *Jackson v. Virginia, supra,* the evidence is constitutionally sufficient to sustain petitioner's convictions.

In view of all of the foregoing, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper

objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel
United States Magistrate Judge

19